USDC-SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC#:
DATE FILED: 03/10/2016

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GORDIAN GROUP, LLC,

　　　　　　　　　　Plaintiff,

　　　　v.

SYRINGA EXPLORATION, INC.,

　　　　　　　　　　Defendant.

No. 15-CV-1312 (RA)

OPINION & ORDER

RONNIE ABRAMS, United States District Judge:

Plaintiff Gordian Group, LLC brings this diversity action against Defendant Syringa Exploration, Inc. alleging breach of an investment banking services contract. Syringa moved to dismiss pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure for lack of personal jurisdiction and pursuant to Rule 12(b)(7) for failure to join an indispensable party. For the reasons that follow, the Court concludes it lacks personal jurisdiction over Defendant. Defendant's motion to dismiss is therefore granted without prejudice to Plaintiff to refile this lawsuit in another forum, and the Court thus need not determine whether Plaintiff failed to join an indispensable party.

## BACKGROUND

### I.　Factual Background[1]

#### A.　The Parties

Plaintiff, a Delaware limited liability company with its principal place of business in New York, is an investment bank "specializing in financial and advisory services in complex and distressed situations." Compl. ¶¶ 16, 18. Defendant is an Idaho corporation with its principal

---

[1] The facts are drawn from the Complaint, the affidavits submitted by the parties in connection with Defendant's motion, and the exhibits accompanying the Complaint and affidavits.

place of business in Idaho. *Id.* ¶ 17. Its "only business consists of the ownership and management of an 80 percent membership interest" in nonparty Crescent Mine, LLC ("Crescent Mine"). Gross Aff. ¶ 3. Crescent Mine, a Delaware limited liability company with its principal place of business in Idaho, is "engaged in the business of owning, acquiring, selling, exploring and operating mineral and metal mines." *Id.* ¶¶ 6–7.

### B.    The Letter Agreement

On October 7, 2013, Plaintiff entered into a letter agreement (the "Agreement") with nonparty United Silver Corp. ("USC") to "be [USC's] exclusive investment banker as [USC] sought to emerge from its financial distress and either restructure or repay its secured debt." Compl. ¶ 19 & Ex. 1 ("Agreement"). At that time, USC owed approximately $9 million to an affiliate of Hale Capital Partners, LLC ("Hale"), and the debt was secured by "substantially all of [USC's] assets." Compl. ¶ 5. USC's "primary asset of value" was Crescent Mine by virtue of USC's complete ownership of a subsidiary called United Mine Services, Inc. ("UMS"), which in turn wholly owned Defendant and its 80 percent interest in Crescent Mine. *Id.* ¶ 27; Gross Aff. ¶ 3. Two Hale subsidiaries held the remaining 20 percent interest in Crescent Mine. Klein Aff. ¶ 3.

In the Agreement, Gordian agreed to assist "the Company"—a term defined to mean USC "together with its subsidiaries"—reduce its debt burden by providing advice and services. Agreement at 1. USC's interim chief executive officer, Greg Stewart, executed the Agreement on behalf of USC. *Id.* at 8. No other individual signed the Agreement on behalf of USC or any of its subsidiaries, though Plaintiff alleges that at that time Mr. Stewart was also Defendant's president and therefore "had actual authority to bind Syringa to the terms of the [A]greement." Compl.

2

¶ 28.  Plaintiff's president, Peter S. Kaufman, executed the Agreement on behalf of Gordian. Agreement at 8.

As is relevant here, the Agreement provides that Plaintiff would be paid a "Transaction Fee" in the amount of five percent of "the principal amounts of any existing debt . . . directly or indirectly amended, assumed, repaid, satisfied, compromised, exchanged, refinanced, restructured, credit bid or retired" by "the Company" as a result of a "Financial Transaction." *Id.* at 2–3.  The term "Financial Transaction" is defined to include, among other events, "a restructuring, amendment, exchange, repayment, satisfaction, assumption, refinancing, extension, compromise or other modification of some or all of the Company's debt." *Id.* at 1.  Plaintiff alleges that the Agreement entitles Gordian to a Transaction Fee "solely on the occurrence of a Financial Transaction" because the Agreement "does not include any 'causation' or 'origination' requirement, or state that Gordian was obligated to have any minimum specified level of involvement in the Financial Transaction giving rise to the obligation to pay a Transaction Fee." Compl. ¶ 23.

The Agreement also provides that:

> The Company's obligations hereunder shall be joint and several obligations of [USC] and any subsidiaries, it being understood and agreed that the Company will cause the subsidiaries of the Company, if any, to perform the Company's obligations hereunder; provided, however, that no such subsidiary shall be required to pay any amount that would cause it to become insolvent and any such amount not so paid shall be reallocated among the remaining such subsidiaries.

Agreement at 7.  In addition, the Agreement contains a mandatory arbitration clause, a New York choice of law clause, and two forum selection clauses. *See id.* at 6–7.  Specifically, the Agreement provides that "the parties . . . consent to the non-exclusive jurisdiction of the federal and state courts sitting in New York City for the purpose of entering judgment upon and enforcing [an

3

arbitration award]" and that "[t]he Company . . . consents to venue and jurisdiction in any court in which Gordian . . . is sued or otherwise found or brought." *Id.*

Plaintiff and USC negotiated the executed the Agreement by telephone and email from their respective offices in New York and Idaho. Gross Aff. ¶ 14; Kaufman Aff. ¶¶ 4–5.

## C.    The Parties' Performance

Plaintiff alleges that after executing the Agreement, it "commenced a series of discussions with Hale" to propose ways that USC could retire some or all of its debt obligations, including "(i) extensions of time that could allow a real third-party exploration process, (ii) conversion of Hale's defaulted debt into more permanent capital, and (iii) a spinoff of certain assets away from Hale and to . . . other stockholders." Compl. ¶ 30. These discussions occurred between October 2013 and January 2014, and Plaintiff performed substantially all of its work pursuant to the Agreement in New York. *Id.* ¶¶ 31–36; Kaufman Aff. ¶ 6.

Plaintiff also alleges that on November 25, 2013, Mr. Stewart, traveled to New York on behalf of USC and—accompanied by Plaintiff's chief executive officer—"personally met with representatives from Hale" at Hale's offices in New York City. Kaufman Aff. ¶ 7 & Ex. 1. According to Plaintiff, after the meeting "Mr. Stewart returned to Gordian's offices and met with" various Gordian employees. *Id.* Although Defendant acknowledges that "a USC representative traveled into New York at one point to negotiate with Hale," it contends that "Gordian was not present at that meeting," "those negotiations were not undertaken pursuant to the [Agreement]," and "nobody acting on behalf of Syringa has ever entered New York." Gross Aff. ¶¶ 15–16.

On January 4, 2014, Hale sought an order from the Ontario Superior Court of Justice, in Canada, appointing a receiver for USC. Compl. ¶ 36. On March 4, 2014, UMS—the USC subsidiary that wholly owned Defendant—entered into a consensual foreclosure agreement with a

Hale affiliate whereby the affiliate acquired all of UMS' assets, including Defendant, in exchange for relieving $7.5 million of USC's debt. *Id.* ¶ 37.

### D. Plaintiff's Attempts to Obtain a Transaction Fee

Plaintiff contends that UMS' "foreclosure and its associated debt relief constituted a Financial Transaction under the [Agreement], pursuant to which Gordian is entitled to a Transaction Fee." Compl. ¶ 38. In March 2014, Plaintiff sent invoices to USC's appointed receiver, UMS, Syringa, and Crescent Mine, but did not receive payment. *Id.* ¶¶ 39–40.

On April 3, 2014, Plaintiff initiated arbitration proceedings against UMS, Syringa, and Crescent Mine. *Id.* ¶ 41. Syringa and Crescent Mine commenced an Article 75 petition in the Commercial Division of New York Supreme Court to stay the arbitration, and Plaintiff moved to dismiss the petition. *Id.* ¶ 42. On October 16, 2014, the court denied Plaintiff's motion, reasoning that because Syringa and Crescent Mine did not sign the Agreement, they were not bound by the arbitration clause contained therein. *Id.* ¶¶ 43–45; Gross Aff. Ex. 13. Of particular concern to the state court was the fact that by agreeing to arbitration, "you are giving up your right to come to an open Court, you are giving up your right to appeal a decision made by a trial [j]udge, and you give up all sorts of other rights, a trial by jury, . . . motions, . . . discovery—all sorts of rights." Gross Aff. Ex. 13 at 18:7–12. Plaintiff did not appeal the state court order. Compl. ¶ 46. On November 20, 2014, the court granted Syringa and Crescent Mine's petition and stayed the arbitration.

## II. Procedural History

After Plaintiff initiated this action "against the one remaining joint and several obligor that it believes both has assets and over which it can establish jurisdiction," Compl. ¶ 46, Defendant moved to dismiss, Dkt. 6. The Court heard oral argument on Defendant's motion on February 22, 2016. Dkt. 22.

## LEGAL STANDARD

"The plaintiff bears the burden of establishing that the court has jurisdiction over the defendant." *Wallert v. Atlan*, ___ F. Supp. 3d ___, 2015 WL 6459219, at *6 (S.D.N.Y. Oct. 26, 2015) (quoting *DiStefano v. Carozzi N. Am., Inc.*, 286 F.3d 81, 84 (2d Cir. 2001)). "Prior to discovery, a plaintiff challenged by a jurisdiction testing motion may defeat the motion by pleading in good faith, legally sufficient allegations of jurisdiction. At that preliminary stage, the plaintiff's *prima facie* showing may be established solely by allegations." *Dorchester Fin. Securities, Inc. v. Banco BRJ, S.A.*, 722 F.3d 81, 84–85 (2d Cir. 2013) (quoting *Ball v. Metallurgie Hoboken–Overpelt, S.A.*, 902 F.3d 194, 197 (2d Cir. 1990)). "This showing may be made through the plaintiff's 'own affidavits and supporting materials, containing an averment of facts that, if credited, would suffice to establish jurisdiction over the defendant.'" *S. New Eng. Tel. Co. v. Global NAPs Inc.*, 624 F.3d 123, 138 (2d Cir. 2010) (quoting *Whitaker v. Am. Telecasting, Inc.*, 261 F.3d 196, 208 (2d Cir. 2001)). The Court must "construe the pleadings and affidavits in the light most favorable to plaintiff[], resolving all doubts in [its] favor." *Id.* (quoting *Porina v. Marward Shipping Co.*, 521 F.3d 122, 126 (2d Cir. 2008)). "Nevertheless, the Court 'will not draw argumentative inferences in the plaintiff's favor' and need not 'accept as true a legal conclusion couched as a factual allegation.'" *Wallert*, 2015 WL 6459219, at *6 (quoting *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013)).

## DISCUSSION

Defendant argues that the Complaint should be dismissed both under Rule 12(b)(2) for lack of personal jurisdiction over Syringa and under Rule 12(b)(7) for failure to join Crescent Mine, which Defendant contends is an indispensable party under Rule 19. *See* Def.'s Mem. 10–24.[2] "[A]

---

[2] Defendant also seeks an order pursuant to Rule 26(c) staying discovery pending resolution of its motion to dismiss. *See* Def.'s Mem. 24–25. Plaintiff did not respond to this argument in its opposition brief. On May 7, 2015,

district court must generally . . . establish that it has federal constitutional jurisdiction" before considering other grounds for dismissal. *Alliance for Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006) (citing *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83, 101 (1998)). "[T]his principle applie[s] equally to personal jurisdiction." *Mones v. Com. Bank of Kuwait, S.A.K.*, 204 F. App'x 988, 989 (2d Cir. 2006) (citing *Ruhragas AG v. Marathon Oil Co.*, 526 U.S. 574, 584 (1999)). The Court therefore must determine first whether it can exercise personal jurisdiction over Defendant.

## I.    Personal Jurisdiction

Plaintiff argues the Court has personal jurisdiction over Defendant by virtue of the forum selection clause in the Agreement and, independently, New York's long-arm statute. *See* Pl.'s Mem. 14–21.[3] Taking the facts as Plaintiff alleges them and assuming that Defendant is bound by the Agreement—as Plaintiff argues but which Defendant contests—the Court disagrees.

### A.    The Forum Selection Clause

"Parties can consent to personal jurisdiction through forum-selection clauses in contractual agreements." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 103 (2d Cir. 2006). "Where an agreement contains a valid and enforceable forum selection clause, . . . it is not necessary to analyze jurisdiction under New York's long-arm statute or federal constitutional requirements of due process." *Export-Import Bank of U.S. v. Hi-Films S.A. de C.V.*, No. 09-CV-3573 (PGG), 2010 WL 3743826, at *4 (S.D.N.Y. Sept. 24, 2010) (citing *Koninklijke Philips Elecs. v. Digital Works, Inc.*, 358 F. Supp. 2d 328, 333 (S.D.N.Y. 2005)). This is so because "[a]n enforceable forum

---

the parties jointly requested—and the Court so ordered—that the initial pretrial conference be adjourned pending resolution of Defendant's motion. *See* Dkt. 17. Defendant's request for an order formally staying discovery is thus denied as moot.

[3] The parties agree, as does the Court, that Defendant is not subject to general personal jurisdiction in New York. *See* Def.'s Mem. 23; Oral Arg. Tr. 20–21.

7

selection clause amounts to consent to personal jurisdiction." *Farrell Lines Inc. v. Columbus Cello-Poly Corp.*, 32 F. Supp. 2d 118, 127 (S.D.N.Y. 1997).

Courts determine whether forum selection clauses are enforceable by asking:

> (1) whether the clause was reasonably communicated to the party resisting enforcement; (2) whether the clause is mandatory or permissive, i.e., whether the parties are required to bring any dispute to the designated forum or simply *permitted* to do so; and (3) whether the claims and parties involved in the suit are subject to the forum selection clause. If the forum selection clause was communicated to the resisting party, has mandatory force and covers the claims and parties involved in the dispute, it is presumptively enforceable. A party can overcome this presumption only by (4) making a sufficiently strong showing that enforcement would be unreasonable or unjust, or that the clause was invalid for such reasons as fraud or overreaching.

*Martinez v. Bloomberg LP*, 740 F.3d 211, 217 (2d Cir. 2014) (internal quotations, alterations, and citations omitted). Treating forum selection clauses that satisfy the first three steps of the analysis as presumptively enforceable "reflects a strong federal public policy of its own," namely "reducing uncertainties about where suit may be brought." *Id.* at 218. More expansively, "[f]orum selection clauses 'further vital interests of the justice system, including judicial economy and efficiency, ensure that parties will not be required to defend lawsuits in far-flung fora, and promote uniformity of result.'" *Id.* at 219 (quoting *Magi XXI, Inc. v. Stato della Citta del Vaticano*, 714 F.3d 714, 722 (2d Cir. 2013)). They should therefore be invalidated only when "it would be unfair, unjust, or unreasonable to hold [a] party to his bargain." *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 18 (1972).

Forum selection clauses "that do not apply to an ascertainable forum, however, undermine those goals, and for that reason courts refuse to enforce them." *Conopco, Inc. v. PARS Ice Cream Co.*, No. 13-CV-1083 (JSR), 2013 WL 5549614, at \*5 (S.D.N.Y. Sept. 26, 2013). Indeed, forum selection clauses that do not indicate where suit may be brought *enhance* uncertainty about where

8

litigation may occur rather than reduce it.  Such clauses also make it *more* likely that parties will have to defend lawsuits in far-flung fora, rather than less, all without promoting judicial economy, judicial efficiency, or uniformity of result.  In light of the federal policies that support enforcing forum selection clauses as a general matter, it is therefore "unfair, unjust, or unreasonable to hold" parties to clauses that do not provide sufficient notice as to the forum being selected.  *M/S Bremen*, 407 U.S. at 18.

Although notice can be sufficient without explicitly naming the jurisdiction in which contracting parties agree to litigate, a forum selection clause must nonetheless allow the parties to predict with a reasonable degree of certainty where they may be haled into court.  Federal courts thus generally enforce forum selection clauses tied to a party's principal place of business despite the risk that the party might relocate.  *See A.I. Credit Corp. v. Liebman*, 791 F. Supp. 427, 429 (S.D.N.Y. 1992) (enforcing forum selection clause selecting jurisdiction of potential transferee's principal place of business); *accord GT Performance Grp., LLC v. Koyo USA, Corp.*, No. 12-CV-83 (TWP), 2013 WL 4787329, at *2 (S.D. Ind. Sept. 6, 2013) (enforcing forum selection clause "that mandates that the state in which the filing party is located . . . is the agreed upon jurisdiction"); *IFC Credit Corp. v. Burton Indus., Inc.*, No. 04-CV-5906 (RAG), 2005 WL 1243404, at *3 (N.D. Ill. May 12, 2005) ("Despite the inherent uncertainty, courts have concluded . . . that a forum-selection clause identifying the forum solely as one party's principal place of business is valid.").  Federal courts have not, however, extended this principle to enforce forum selection clauses containing even more uncertainty, such as preemptively waiving any personal jurisdiction defense no matter where suit is brought or agreeing to jurisdiction in any state that may be relevant to a party's contractual performance.  *See Conopco*, 2013 WL 5549614, at *5–6 (refusing to endorse forum selection clause that waived any personal jurisdiction defense); *Redrock Trading Partners,*

*LLC v. Baus Mgmt. Corp.*, No. 13-CV-43 (JRH), 2014 WL 5106998, at *3 (S.D. Ga. Oct. 10, 2014) (refusing to enforce an "impermissibly vague" forum selection clause that authorized suit in any "such [s]tate in connection with any action or proceeding arising out of" the contract).

The relevant forum selection clause in the Agreement—in contrast to the Agreement's forum selection clause related to enforcing arbitration awards—does not apply to an ascertainable forum. The clause provides that "[t]he Company . . . consents to venue and jurisdiction in any court in which Gordian . . . is sued or otherwise found or brought." Agreement at 6. This language is far from a paragon of clarity. It cannot be read, for example, to bind the parties to litigate only in the jurisdiction in which Plaintiff is located by virtue of having its principal place of business there. Read most broadly, it could be interpreted to obligate USC and its subsidiaries to litigate "in any court" Plaintiff may select by filing suit and thus being "found" there. Such an interpretation would allow Plaintiff to choose to litigate in any jurisdiction—or in other words, would provide USC's "consent to be sued anywhere in the world"—and the clause would be plainly unenforceable. *A.I. Credit Corp.*, 791 F. Supp. at 429.

Plaintiff argues that the forum selection clause should be read more narrowly, specifically to agree to litigation in New York (where Defendant's president "had to know that Gordian . . . could be found" because that is where Plaintiff's office is located) or Delaware (where Plaintiff is registered as a limited liability company). Dkt. 24 at 1; *see* Oral Arg. Tr. 18–19. According to Plaintiff, because Gordian can be "found" in these two states, reading the forum selection clause to apply to any other jurisdiction "is wholly implausible." Dkt. 24 at 1.[4] The Court disagrees. This argument ignores those portions of the forum selection clause authorizing litigation in any

---

[4] Plaintiff's counsel speculated at oral argument that the forum selection clause may also "leave[] open the possibility that if Gordian performed a significant amount of work in some other jurisdiction for that client, perhaps Gordian could establish jurisdiction there." Oral Arg. Tr. 20.

court in which Gordian is "sued" or "brought." Presumably those words must expand the scope of the forum selection clause beyond where Plaintiff is "found," or else they would be superfluous. But how do they expand it? Does "sued" refer to any court in which Gordian has been a defendant? Or only those courts in which Gordian is a defendant in a lawsuit related to the Agreement? Or perhaps those courts in which Gordian could be sued and subject to personal jurisdiction? What about "brought"? Does that word anticipate that Gordian may change its principal place of business in the future? Or does it refer to the possibility that Gordian's performance under the Agreement could require substantial work outside its New York office? Plaintiff does not say, and neither can the Court from the language of the forum selection clause alone. For this reason, even accepting Plaintiff's interpretation of the word "found," the clause is "impermissibly vague," *Redrock Trading Partners*, 2014 WL 5106998, at *3, and fails to "reduc[e] uncertainties about where suit may be brought" at the time Plaintiff and USC executed the Agreement, *Martinez*, 740 F.3d at 218.

Because the forum selection clause at issue contravenes the federal policies that support enforcing such clauses, it is unenforceable and provides no ground to support personal jurisdiction over Defendant. In reaching this conclusion, the Court need not determine whether Defendant is bound by the Agreement as a whole. That issue—which goes directly to the merits of Plaintiff's claim—should properly be determined by a court of competent jurisdiction.

## B.   Long-Arm Jurisdiction

As is relevant here, New York's long-arm statute authorizes courts to exercise personal jurisdiction "over any non-domiciliary . . . who in person or through an agent . . . transacts any business within the state" so long as the cause of action "aris[es] from" that transaction. N.Y. C.P.L.R. § 302(a)(1). Thus, "a plaintiff may exercise 'personal jurisdiction over a non-domiciliary

if two conditions are met: first, the non-domiciliary must transact business within the state; second, the claims against the non-domiciliary must arise out of that business activity.'" *Aquiline Capital Partners LLC v. FinArch LLC*, 861 F. Supp. 2d 378, 386 (S.D.N.Y. 2012) (quoting *CutCo Indus., Inc. v. Naughton*, 806 F.2d 361, 365 (2d Cir. 1986)).

"[T]he overriding criterion necessary to establish a transaction of business is some act by which the defendant purposefully avails itself of the privilege of conducting activities within New York." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 673 F.3d 50, 61 (2d Cir. 2012) (quoting *Ehrenfeld v. Bin Mahfouz*, 881 N.E.2d 830, 834 (N.Y. 2007)). "A defendant need not physically enter New York State in order to transact business, 'so long as the defendant's activities here were purposeful.'" *Id.* (quoting *Fischbarg v. Doucet*, 880 N.E.2d 22, 26 (N.Y. 2007)). In *Licci*, the Second Circuit surveyed New York Court of Appeals case law and concluded that "it is the quality of the defendants' New York contacts that is the primary consideration." *Id.* at 62 (quoting *Fischbarg*, 880 N.E.2d at 26). In some cases, therefore, "[a] single act within New York will . . . satisfy the requirements of section 302(a)(1)." *Id.* (citing *Deutsche Bank Sec., Inc. v. Montana Bd. of Inv.*, 850 N.E.2d 1140, 1143 (N.Y. 2006)). In others, "when an individual act in New York will not suffice, an ongoing course of conduct or relationship in the state may." *Id.* (citing *Fischbarg*, 880 N.E.2d at 28). In the end, "whether a defendant has purposefully availed itself of the New York forum is a fact-intensive inquiry inasmuch as it requires the trial court, in the first instance, to 'closely examine the defendant's contacts for their quality.'" *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 168 (2d Cir. 2013) (quoting *Licci v. Lebanese Canadian Bank*, 984 N.E.2d 893, 899–900 (N.Y. 2012)).

The Second Circuit has articulated four relevant factors when determining whether a defendant transacts business in New York via contract. Courts must consider:

> (i) whether the defendant has an on-going contractual relationship with a New York corporation; (ii) whether the contract was negotiated or executed in New York and whether, after executing a contract with a New York business, the defendant has visited New York for the purpose of meeting with parties to the contract regarding the relationship; (iii) what the choice-of-law clause is in any such contract; and (iv) whether the contract requires franchisees to send notices and payments into the forum state or subjects them to supervision by the corporation in the forum state.

*Sunward Electronics, Inc. v. McDonald*, 362 F.3d 17, 22–23 (2d Cir. 2004) (quoting *Agency Rent A Car Sys., Inc. v. Grand Rent A Car Corp.*, 98 F.3d 25, 29 (2d Cir. 1996). "Although all factors are relevant, no one factor is dispositive and other factors may be considered." *Id.* at 23. Courts must ultimately decide "based on the totality of the circumstances." *Id.* (quoting *Agency Rent A Car Sys.*, 98 F.3d at 29).

Here, even assuming the Agreement binds Defendant, Plaintiff has failed to allege sufficient facts to make a *prima facie* case that the Court may exercise personal jurisdiction over Syringa. The factors identified by the Second Circuit, as well as those additional factors Plaintiff argues the Court should consider, are each analyzed in turn.

### 1.    Ongoing Contractual Relationships

Plaintiff argues that because it "is a citizen of the State of New York by virtue of the location of its principal offices," the Agreement created an ongoing contractual relationship with a New York corporation "[f]rom October 7, 2013 (the date the [Agreement] was signed) until March 2014 (when Hale entered into the consensual foreclosure with [UMS])." Pl.'s Mem. 21 n.6. During this approximately six-month period, Plaintiff argues that it "provided investment banking services to and for the benefit of [USC] and all of its subsidiaries, and those services were performed by Gordian almost exclusively in New York." *Id.* Defendant counters that, as a matter of law, ongoing contractual relationships are "seldom . . . found" when the disputed contract is the only contract between the parties. Def.'s Reply 7.

13

The Court agrees with Defendant that Gordian and Syringa did not have an ongoing contractual relationship. "[D]istrict courts within this Circuit have held that a single short-term contract is not enough to constitute an 'ongoing contractual relationship' for the purposes of personal jurisdiction." *Sandoval v. Abaco Club on Winding Bay*, 507 F. Supp. 2d 312, 317 (S.D.N.Y. 2007) (citing *Mortgage Funding Corp. v. Boyer Lake Pointe, L.C.*, 379 F. Supp. 2d 282, 287 (E.D.N.Y. 2005); *Burrows Paper Corp. v. R.G. Engineering, Inc.*, 363 F. Supp. 2d 379, 385 (N.D.N.Y. 2005)). In *Sandoval*, the court held that no ongoing contractual relationship existed between a New York-based corporation and a foreign defendant to install an irrigation system, the physical labor for which was performed between December 2003 and October 2004. *See id.* at 314. This ten- or eleven-month period exceeds the six-month period during which Plaintiff alleges it performed work on Defendant's behalf. Because the Agreement is the only source of contractual obligations between the parties, it is therefore properly characterized as a single short-term contract and not the foundation of an ongoing contractual relationship.

Plaintiff characterizes *Sandoval* as "an outlier" and urges the Court to rely instead on *Deutsche Bank Securities* and *Fischbarg*, two New York Court of Appeals decisions holding that New York courts could exercise personal jurisdiction over out-of-state defendants who sought to contract with New York-based entities. Oral Arg. Tr. 23–24; Dkt. 24 at 2. As this Court has previously noted, however, *Deutsche Bank Securities* and *Fischbarg* do not "stand for the proposition that initiating a transaction with a plaintiff in New York amounts to transacting business." *Three Five Compounds, Inc. v. Scram Technologies, Inc.*, No. 11-CV-1616 (RJH), 2011 WL 5838697, at *9 (S.D.N.Y. Nov. 21, 2011). Those cases, rather, "fit well into a line of decisions emphasizing [] 'the purposeful creation of a continuing relationship with a New York

corporation.'" *Id.* at \*10 (quoting *George Reiner & Co. v. Schwartz*, 363 N.E.2d 551, 554 (N.Y. 1977)).

In *Deutsche Bank Securities*, the Court of Appeals held that New York courts could exercise personal jurisdiction over "a Montana state agency charged with managing an investment program for public funds, the public retirement system and state compensation insurance fund assets" after an employee at the agency electronically negotiated a \$15 million bond sale with one of the plaintiff's employees in New York. 850 N.E.2d at 1141. In analyzing the agency's contacts with New York, the court noted that bond transactions such as the one in dispute were "a major aspect of [the agency's] mission" and that "over the preceding 13 months, [the agency] had engaged in approximately eight other bond transactions with [plaintiff's] employee in New York." *Id.* at 1143. The court therefore concluded that the agency had "avail[ed] itself of the benefits of conducting business" in New York despite never physically entering the state. *Id.*

Defendant's relationship with Plaintiff is scant by comparison. The Agreement was the first transaction between USC and Plaintiff, and the relationship existed for a significantly shorter period of time than the relationship at issue in *Deutsche Bank Securities*. The Agreement's subject matter, moreover, involved investment banking services and debt relief, which Plaintiff does not allege were "major aspect[s]" of Defendant's or USC's silver mining business. *Deutsche Bank Securities* therefore does not mandate the conclusion that Defendant here sought to avail itself of conducting business in New York.

Plaintiff's reliance on *Fischbarg* fares no better. In *Fischbarg*, the Court of Appeals held that an out-of-state defendant who hired a New York attorney was subject to personal jurisdiction in New York. *See* 880 N.E.2d at 24. Crucial to this conclusion was the fact that, by retaining a New York lawyer, the defendant was protected by New York's laws regarding "the attorney-client

15

relationship" throughout the representation. *Id.* at 28. By contrast, the relationship created by the Agreement did not implicate any specific New York law by virtue of Plaintiff's location in the state.

These features of *Deutsche Bank Securities* and *Fischbarg* "explain[] why courts in this district have found personal jurisdiction where parties' communications were part and parcel of an extended relationship involving multiple transactions or the provision of services over multiple years." *Three Five Compounds*, 2011 WL 5838697, at *10. Far from being an outlier, *Sandoval* is consistent with these cases because it found jurisdiction to be lacking when the parties had neither "multiple transactions" nor "multiple years" of contract performance. *See id.* & n.4. The same is true here.

## 2. Location of Negotiation and Execution and Visits to New York

Plaintiff argues this factor favors the exercise of personal jurisdiction both because the Agreement was partially negotiated and executed in New York and because Mr. Stewart (concurrently USC's interim chief executive officer and Defendant's president) visited New York once after the Agreement was signed to meet with representatives of Plaintiff and Hale. The Court again disagrees.

With regard to the negotiation and execution of the Agreement, Plaintiff argues that "Gordian negotiated and executed [the Agreement] from its offices in New York, so at least its half of that process was unquestionably in this jurisdiction." Pl.'s Mem. 21 n.6. Plaintiff does not dispute that USC negotiated and executed the Agreement from Idaho and communicated with Gordian in New York only by telephone and email. *See* Gross Aff. ¶ 14. Plaintiff's argument is therefore "inappropriately focused on [the plaintiff's] own activities in New York and not [the defendant's]." *Centerboard Securities, LLC v. Benefuel, Inc.*, No. 15-CV-71 (PAC), 2015 WL

16

4622588, at *2 (S.D.N.Y. Aug. 3, 2015); *see also Falow v. Cucci*, No. 00-CV-4754 (GBD), 2003 WL 22999458, at *5 (S.D.N.Y. Dec. 19, 2003) ("The unilateral activity of plaintiff executing a contract in New York is an insufficient basis upon which to acquire jurisdiction over a non-domiciliary defendant.").

"[T]he prevailing rule is that [a defendant's] 'communications into New York will only be sufficient to establish personal jurisdiction if they were related to some transaction that had its center of gravity inside New York, into which a defendant projected himself.'" *Three Five Compounds*, 2011 WL 5838697, at *7 (quoting *Maranga v. Vira*, 386 F. Supp. 2d 299, 306 (S.D.N.Y. 2005)). For example, when an out-of-state defendant participates by telephone in a live auction occurring in New York, it is "highly significant that, on his own initiative, the defendant, in a very real sense, project[s] himself into the auction room in order to compete with the other prospective purchasers who [a]re there." *Parke-Bernet Galleries, Inc. v. Franklyn*, 256 N.E.2d 506, 508 (N.Y. 1970). By contrast, when an out-of-state defendant contracts with a New York-based company to "obtain services to sell [the defendant's] stock or assets," the connection to New York is too "random" and "attenuated" to be jurisdictionally significant. *PaineWebber Inc. v. WHV, Inc.*, No. 95-CV-52 (LMM), 1995 WL 296398, at *3 (S.D.N.Y. May 16, 1995); *see also Lamco Grp., Inc. v. Universal Life Ins. Co.*, 903 F. Supp. 612, 613–14 (S.D.N.Y. 1995) (relying on *PaineWebber* to conclude jurisdiction was lacking over defendant who contracted with "a New York merchant banking firm" to assist defendant "in connection with its efforts to complete a sale or merger of its business").

Nothing in the record suggests that Defendant projected itself into a New York-based transaction when USC executed the Agreement. The Agreement itself provides that USC retained Plaintiff "to provide certain financial advisory and investment banking services" related to USC's

17

Idaho-based business without reference to any transaction in New York. Agreement at 1. Although Plaintiff alleges it performed its obligations from New York, nothing in the Agreement required it to do so. *See Centerboard Securities*, 2015 WL 4622588, at \*2 (noting that "nothing in the contract required [plaintiff] to perform in New York"). UMS' foreclosure agreement— because of which Plaintiff contends it is entitled to payment under the Agreement—moreover, was executed in Canada, not New York. *See* Compl. ¶¶ 36–37. Even assuming that Mr. Stewart's communications from Idaho to New York during the process of negotiating and executing the Agreement can be attributed to Defendant, therefore, such communications are insufficient to establish personal jurisdiction.

As to Mr. Stewart's physical presence in New York, Plaintiff cites to a meeting in New York City on November 25, 2013 between Mr. Stewart, Gordian's chief executive officer, and representatives of Hale, after which Mr. Stewart visited Gordian's offices and met with other Gordian employees. *See* Pl.'s Mem. 18; Kaufman Aff. ¶ 7 & Ex. 1. Even assuming Mr. Stewart represented both USC and Defendant while in New York, this argument also fails to establish personal jurisdiction over Syringa.

Courts are "skeptical of attempts to assert personal jurisdiction over a defendant based on a single meeting in New York, especially where that meeting did not play a significant role in establishing or substantially furthering the relationship of the parties." *Posven, C.A. v. Liberty Mut. Ins. Co.*, 303 F. Supp. 2d 391, 398 (S.D.N.Y. 2004); *see also Three Five Compounds*, 2011 WL 5838697, at \*4–5 (collecting cases). When a single meeting in New York is not related to the negotiation of a contract, courts afford it even less weight. *See CutCo Industries*, 806 F.2d at 368 (holding that a party's visit to New York after a contract was formed "should be considered jurisdictionally irrelevant inasmuch as attempts to renegotiate an existing contract do not constitute

18

a CPLR 302 'transaction of business'"); *Three Five Compounds*, 2011 WL 5838697, at *11–12 (concluding that meetings that "did not occur during contract negotiations and did not result in any contract" did not amount to the transaction of business); *Lamco Grp.*, 903 F. Supp. at 613 (determining that personal jurisdiction was lacking when "defendant's only visit to New York occurred after the execution of the contract" and "[t]he visit was unproductive in that it did not result in the sale of defendant's company"); *PaineWebber*, 1995 WL 296398, at *3 (deciding that the court could not exercise personal jurisdiction over defendant who attended three meetings in New York).

Mr. Stewart's November 25, 2013 meeting in New York is insufficient to establish personal jurisdiction over Defendant. First, the meeting occurred well after the Agreement was executed on October 7, 2013. Second, even interpreting the facts alleged in the light most favorable to Plaintiff, the meeting did not "substantially further[]" Defendant's relationship with Plaintiff. *Posyen, C.A.*, 303 F. Supp. 2d at 398. The meeting also included Hale, and was apparently unsuccessful given that Hale subsequently initiated receivership proceedings against USC in Canada. Given these circumstances, Mr. Stewart's single meeting in New York is insufficient to confer personal jurisdiction over Defendant.

The facts at issue here are almost identical to those in *PaineWebber* and *Lamco Group*. In *PaineWebber*, the defendant was a California-based corporation that executed a contract by which the plaintiff, a New York-based entity, would "act as a financial adviser and an exclusive agent for purposes of sale of [defendant's] stock and/or assets." 1995 WL 296398, at *1. No representative of the defendant visited New York during contract negotiations. *See id.* After the contract was in place, the plaintiff performed its obligations in New York, and representatives of the defendant visited New York three times to meet with the plaintiff. *See id.* Noting that the meetings "did not

involve contract negotiations," "no contracts were signed" at them, and one meeting "was unproductive since it did not, as planned, result in the expansion of [plaintiff's] efforts to sell [defendant]," the court concluded that they did not subject the defendant to personal jurisdiction in New York. *Id.* at \*3.

Similarly, in *Lamco Group*, the defendant was an out-of-state corporation that entered into a contract with a New York-based "merchant banking firm [that] specialize[d] in providing financial advisory services" to "assist [defendant] in connection with its efforts to complete a sale or merger of its business." 903 F. Supp. at 613. The parties negotiated the contract by telephone, and the defendant made one visit to New York after the contract was executed "for the purpose of meeting a candidate." *Id.* That meeting "was unproductive in that it did not result in the sale of defendant's company." *Id.* The court found the facts to be "virtually indistinguishable" from *PaineWebber*. *Id.* at 614.

So too here. USC negotiated and executed a financial advisory services contract with a New York-based entity without visiting the state before the contract was finalized. Plaintiff's performance occurred in New York, and after the contract was executed, one meeting occurred in New York that was ultimately unsuccessful. Just as in *PaineWebber* and *Lamco Group*, these facts do not confer personal jurisdiction on Defendant in New York.[5]

---

[5] Plaintiff's attempts to distinguish *PaineWebber* and *Lamco Group* are unavailing. First, Plaintiff argues that these cases "no longer reflect[] the current state of New York law regarding long-arm jurisdiction" in light of the New York Court of Appeals' decisions in *Deutsche Bank Securities* and *Fischbarg*. Dkt. 24 at 2. As noted above, however, *Deutsche Bank Securities* and *Fischbarg* do not "stand for the proposition that initiating a transaction with a plaintiff in New York amounts to transacting business" for the purposes of establishing personal jurisdiction. *Three Five Compounds*, 2011 WL 5838697, at \*9. Second, Plaintiff argues that the facts here are unlike those in *PaineWebber* and *Lamco Group* because Plaintiff "*had*" to perform its obligations in New York given the fact that Hale is also based in New York. Dkt. 24 at 2. As in *Lamco Group*, however, nothing in the Agreement required Plaintiff to perform in New York. Nor did the Agreement require Plaintiff to negotiate with Hale to effect a Financial Transaction. The fact that Hale is located in New York therefore does not dictate the result of the jurisdictional analysis.

20

3.     **Choice-of-Law Clause**

There is no dispute that the Agreement contains a New York choice-of-law clause. *See* Agreement at 6 ("This Agreement shall be governed and construed in accordance with the laws of the State of New York (without reference to its principles of conflict of law)."). "While it is appropriate to give some weight to [a] choice of law provision, a choice of law clause alone is not dispositive." *Premier Lending Services, Inc. v. J.L.J. Associates*, 924 F. Supp. 13, 17 (S.D.N.Y. 1996) (internal citation omitted).

4.     **Franchisees Required to Send Notices or Payments to New York**

Plaintiff argues that "although the [Agreement] is silent on the subject of notices, payments under the [Agreement], when and if due, were to be made to Gordian in New York." Pl.'s Mem. 21 n.6. The Agreement indeed provides that upon a Financial Transaction occurring, "the Company shall pay or cause to be paid to Gordian" the applicable Transaction Fee. Agreement at 2. The Agreement does not, however, create a franchise relationship between Plaintiff and Defendant. This factor accordingly "do[es] not provide any support for finding personal jurisdiction." *Three Five Compounds*, 2011 WL 5838697, at *6.

5.     **Other Factors**

Plaintiff makes two additional arguments as to why Defendant is subject to personal jurisdiction in New York. *See Sunward Electronics*, 362 F.3d at 23 (noting that "other factors [beyond the four specifically articulated] may be considered"). Neither weighs in favor of exercising jurisdiction.

First, Plaintiff argues that it performed its obligations under the Agreement "almost exclusively in New York" and that Defendant "accepted the benefits of Gordian's services." Pl.'s Mem. 18. This argument fails "because a plaintiff's unilateral activities cannot support a finding

of personal jurisdiction over a defendant." *Navaera Sci., LLC v. Acuity Forensic Inc.*, 667 F. Supp. 2d 369, 375 (S.D.N.Y. 2009); *see also Centerboard Securities*, 2015 WL 4622588, at *3 (rejecting argument that "having virtually all of the contract performed by the [plaintiff] in New York" supported exercise of personal jurisdiction over defendant).

Second, Plaintiff argues that Defendant has agreed, in other contracts, to exclusive forum selection clauses selecting New York courts and has in fact litigated other cases in New York courts. *See* Pl.'s Mem. 20–21. When evaluating a defendant's contacts with a forum, "there is some authority for the proposition that 'personal jurisdiction exists where a defendant independently seeks affirmative relief in a separate action before the same court concerning the same transaction or occurrence.'" *China Nat'l Chartering Corp. v. Pactrans Air & Sea, Inc.*, 882 F. Supp. 2d 579, 591–92 (S.D.N.Y. 2012) (quoting *Dow Chem. Co. v. Calderon*, 422 F.3d 827, 834 (9th Cir. 2005)). Only one of the examples Plaintiff cites "concern[s] the same transaction or occurrence" as this lawsuit: Defendant's Article 75 petition in New York State court to stay Plaintiff's arbitration proceeding. That petition, however, was effectively a defense to Plaintiff's arbitration, not an effort "independently seek[ing] affirmative relief." Nor was it filed "before the same court" as this lawsuit. Accordingly, none of Defendant's other agreements selecting New York as a forum for litigation or experience litigating in New York courts supports the exercise of personal jurisdiction over Defendant in this lawsuit.

*        *        *

In sum, the only factor supporting the exercise of personal jurisdiction is the Agreement's choice-of-law clause. Even assuming Defendant is bound by the Agreement, this factor alone is insufficient to make a *prima facie* case that the Court may exercise personal jurisdiction over Defendant. *See Premier Lending Services*, 924 F. Supp. at 17 ("In this case, where the

jurisdictional contacts fall far short of the purposeful availment requirement, the choice of law clause simply does carry enough weight for plaintiff to meet its burden.").

## II.      Joinder

Because the Court cannot exercise personal jurisdiction over Defendant, it need not determine whether Plaintiff failed to join an indispensable party. *See Hovensa LLC v. Kristensons-Petroleum, Inc.*, No. 12-CV-5706 (SAS), 2013 WL 1803694, at *6 (S.D.N.Y. Apr. 26, 2013) ("Because [defendant's motion to dismiss for lack of personal jurisdiction] is granted, I do not reach the alternate grounds of failure to join an indispensable party under Rule 12(b)(7).").

## CONCLUSION

Defendant's motion to dismiss is granted pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure because the Court lacks personal jurisdiction over Syringa.  The Court need not determine whether Plaintiff failed to join an indispensable party as required by Rule 19.  This action is therefore dismissed without prejudice to Plaintiff to refile it in another forum.  The Clerk of Court is respectfully directed to close item number 6 on the docket and to close this case.

SO ORDERED.

Dated:     March 10, 2016
           New York, New York

Ronnie Abrams
United States District Judge

23